IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CHERILYN PATRICIA PARSONS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-00041-O-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Cherilyn Parsons seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("SSA"). After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

I.  **STATEMENT OF THE CASE**

Parsons seeks DIB and SSI under Titles II and XVI of the SSA, respectively. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF Nos. 20; 20-1, at 241-47. She applied for benefits in January 2016, reporting disability because of depression, anxiety, back problems, and a tilted pelvis. Tr. 241, 243, 262. Her applications alleged a disability onset date of May 2, 2015. *Id.* at 241, 243. Parsons indicated she received a GED in 1991 and completed additional coursework in medical assisting in 1994. *Id.* at 263. She reported prior work experience as a cashier, EDI specialist, medical records keeper, and stocker. *Id.* at 264.

The Commissioner determined Parsons was not disabled and denied her applications initially and upon reconsideration. *Id.* at 149, 118. After the Commissioner's second denial, Administrative Law Judge ("ALJ") Kevin Batik conducted a hearing at Parsons's request (*Id.* at 41-81) and affirmed the Commissioner's decision. *Id.* at 7-19. After the Social Security Appeals Council ("AC") denied further administrative review, Parsons filed a complaint in this Court in February 2019 seeking review of the ALJ's decision. *Id.* at 763-64. The Court reversed the decision because the ALJ relied on selective quotes from a consultative examination to justify his determination of her residual functional capacity ("RFC"), even though the examination reached the opposite conclusion. *Id.* at 773-85. Finding such evidentiary cherry-picking constituted harmful error, the Court remanded Parsons's case for further administrative proceedings. *Id.* On October 8, 2020, Parsons again testified at a hearing before the ALJ. *Id.* at 707-32. The ALJ again denied her claim. *Id.* at 674-90.

After the AC declined to review the ALJ's second unfavorable decision, Parsons filed this action seeking judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). Parsons's action raises a single challenge: whether substantial evidence supports the ALJ's physical RFC determination. *See* ECF No. 26 at 4. Parsons thinks not, arguing the ALJ improperly substituted his own lay medical opinion for that of the State Agency's expert, thus resulting in an RFC determination unsupported by substantial evidence. *Id.*

**II.     STANDARD OF REVIEW**

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381-83(f). To access benefits under either program, claimants must show they are

2

"disabled" within the meaning of the SSA. *Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988). A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's RFC and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a

claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III. ANALYSIS

The ALJ applied correct legal standards and substantial evidence supports his conclusion. *See Leggett*, 67 F.3d at 564. The ALJ proceeded through the five-step sequential analysis, finding

at step one that Parsons had not engaged in any substantial gainful activity since her alleged onset date in May 2015. Tr. 739. At step two, he found Parsons's degenerative disc disease and depression qualified as "severe impairments." *Id.* At step three, he determined neither impairment met or medically equaled those listed in 20 C.F.R. pt. 404, subpt. P, app 1. *Id.* With respect to her degenerative disc disease, the ALJ explained:

> The claimant's degenerative disc disease does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication.

*Id.* Thus, although the ALJ found her degenerative disc disease was a "severe impairment" at step two, he saw no persuasive evidence it met or equaled a condition in the regulatory listing at step three. *Id.*

The ALJ reached the same conclusion regarding Parsons's depression, explaining his analysis as follows:

> The severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis . . . I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of [her] daily life.

*Id.* at 740. Finding no match or medical equal between Parsons's conditions and the regulatory list, the ALJ proceeded to his RFC determination, which was required before moving on to step four. *See id.* at 740-43.

The ALJ evaluated Parsons's RFC "based on all the evidence, with consideration of the limitations and restrictions imposed by the combined effects of all [her] medically determinable impairments." *Id.* at 741. After considering the medical evidence of record, the ALJ made the following RFC determination:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She can never work at unprotected heights or drive as part of her job. The claimant can understand, remember, and carry out simply tasks and instructions. She cannot interact with the public but is able to occasionally interact with supervisors and coworkers.

*Id.* at 740. Based on the functional limitations observed in his RFC evaluation, the ALJ found Parsons could not perform any PRW. *Id.* at 743. Nevertheless, based on her RFC, the ALJ concluded Parsons could work as a mail clerk (54,000 jobs in the national economy), hand packager (60,000 jobs in the national economy), and garment folder (10,000 jobs in the national economy), among other similar jobs. *Id.* at 745.

Parsons asserts the ALJ reached an RFC determination unsupported by substantial evidence. ECF No. 26 at 12. She claims the ALJ "mischaracterized" certain opinion evidence because he purportedly assigned "greater weight" to the opinion of State consultant Javier Torres, M.D., while reaching a conclusion that differed from Torres's. *Id.* at 13. The ALJ found her capable of performing "light work with postural and environmental limitations." *Id.* at 13; *see* Tr. 688. But Parsons emphasizes the word "sedentary" in Dr. Torres's report, though he only uses the word once. *See* ECF No. 26 at 12-13; Tr. 143. In so doing, Parsons interprets Torres's findings

differently than the ALJ, believing Dr. Torres found she had "the maximum sustained work capability to perform sedentary work." *See* ECF No. 26 at 13 (discussing Tr. 688, 143). Parsons does not believe the ALJ adequately reconciled this perceived inconsistency. *Id.* She contends this warrants remand, and rightly notes that this Court cannot "perform its assigned review function when the ALJ does not reconcile apparent inconsistencies in the decision that may affect the RFC finding." *Id.* (discussing *Mirza v. Saul*, No. 4:19-cv-00284-P-BP, 2020 WL 3545388 (N.D. Tex. June 30, 2020) (citing *Bagwell v. Barnhart*, 338 F. Supp. 2d 723, 735 (S.D. Tex. 2004)), *rec. adopted* 2020 WL 3545388, at *1 (N.D. Tex. June 30, 2020)). Parsons contends this may have affected the ALJ's RFC evaluation, and thus argues "[t]he failure of the ALJ to reconcile this inconsistency is error." *Id.* As discussed below, this argument is unpersuasive because the substance of Dr. Torres's report lends irrefutable support to the ALJ's RFC determination.

Parsons further argues substantial evidence does not support the RFC determination because the ALJ "insert[ed] his own lay medical opinion" in lieu of expert medical opinions. ECF No. 26 at 14-15. She takes issue with the inclusion in her application's medical record of a December 2017 x-ray which seems to evidence thoracolumbar scoliosis and mild degenerative changes in her C6-C7 and L5-S1 vertebrae. *Id.* at 14 (citing Tr. 1082). Parsons contends that "since there was no medical opinion for the ALJ to rely on in interpreting the most recent medical evidence, the ALJ improperly inserted his own lay medical opinion." *Id.* Parsons argues such an evidentiary mishandling warrants remand, drawing heavily upon this Court's precedent in *Kimberly P. v. Comm'r of Soc. Sec. Admin.*, No. 3:19-cv-00893-L-BK, 2020 WL 4756758, at *4 (N.D. Tex. Jul. 30, 2020) (reversing the ALJ's decision and remanding the case because the ALJ improperly relied upon "roughly 900 pages of medical records" in his opinion). Because the instant

matter is distinguishable from *Kimberly P.*, Parsons's reliance on that case is misguided. Thus, her argument regarding the December 2017 x-ray is unavailing.

### A. Substantial evidence supports the ALJ's physical RFC determination.

This Court's review of an ALJ's determination is "highly deferential." *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005). When reviewing an ALJ's evidentiary analysis, as Parsons seeks here, the Court asks only if the decision contains "such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley*, 67 F.3d at 555. While Parsons takes no issue with the ALJ's evaluation of her mental RFC, she insists his "physical RFC determination is unsupported by substantial evidence." ECF No. 26 at 15. But the Court will only reach that conclusion "if no credible evidentiary choices or medical findings support the decision." *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417). Because that cannot be said here, the undersigned concludes substantial evidence supports the ALJ's decision.

#### 1. The ALJ did not mischaracterize Dr. Torres's opinion.

Before proceeding to step four, the ALJ found Parsons had the RFC to "perform light work," which included the ability to "occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl." Tr. 740. Parsons notes the ALJ assigned "greater weight" to Dr. Torres's opinion. *See* ECF No. 26 at 13 (quoting Tr. 688). However, Parsons asserts Dr. Torres's opinion does not support the ALJ's finding that she could perform "light work with postural and environmental limitations." *Id.* She points out that Torres indicated "sedentary" when asked to predict Parsons's "maximum sustained work capability." Tr. 143. But Parsons relies too much on the formal labels in Torres's opinion, rather than the substance. This misplaced emphasis renders her argument unpersuasive.

While Dr. Torres indicated "sedentary" when prompted to predict Parsons's maximum sustained work capability, the substance of his opinion supports the ALJ's finding, notwithstanding that singular label to the contrary. Although Dr. Torres indicated Parsons could do "sedentary" work, the ALJ observed that Dr. Torres found Parsons capable of a significant range of light work with "postural and environmental limitations." *See* ECF No. 27 at 4. Dr. Torres found Parsons could: occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 4 hours, sit for 6 hours, climb ramps/stairs frequently, climb ladders/ropes/scaffolds occasionally, balance frequently, crouch occasionally, and crawl occasionally. Tr. 138-39. He noted Parsons had an unlimited ability to push or pull objects, subject to her limitations when carrying loads of more than 10 pounds. *Id.* at 138. He saw no manipulative, visual, or communicative limitations, but did note she would have certain environmental limitations. *Id.* He also opined that objective medical evidence alone did not verify her subjective reports of symptom severity. *Id.* at 137.

Considering the clarity of those exertional findings, the substance of Dr. Torres's opinion clearly supports the ALJ's RFC determination, notwithstanding his single use of the term "sedentary" with respect to Parsons's maximum sustained work capability. The ALJ did not "mischaracterize" the evidence by looking to the above findings and concluding "[Dr. Torres] opined that the claimant could perform a range of light work with postural and environmental limitations." *Id.* at 688.  As the Commissioner aptly states: "Although Plaintiff relies on the fact that Dr. Torres described [her] limitations as sedentary, the ALJ's reliance on the actual functional limitations opined by Dr. Torres—rather than whatever label he chose to assign to such restriction—was entirely proper." ECF No. 27 at 4 (internal citation omitted). Upon review of the ALJ's analysis and Dr. Torres's findings, the undersigned agrees.

Parsons's argument is misguided because it critiques an area where the ALJ was lenient toward her subjective limitation reports. The ALJ assigned greater weight to Dr. Torres's opinion at the reconsideration level because he believed initial evaluations underestimated the scope of Parsons's functional limitations. As he explained:

> [T]he State agency's medical consultants determined, at the initial level that the claimant does not have any physical limitations. However, at the reconsideration level the claimant could perform a range of light work with postural and environmental limitations. The State medical consultants' determination, at the initial level, is only partially consistent with the evidence available at the time of their review of the record. Diagnostic imaging also corroborated the examination findings by showing disc narrowing at L5-S1. The claimant has a history of degenerative changes in her spine that would pose some limitations. I give greater weight to the opinion at the reconsideration level. On exam, the claimant had limited range of motion in her spine but she was able to ambulate with a steady gait. She was able to perform toe, heel, and tandem walking without difficulty. She also revealed that Tylenol and stretches control her pain.

Tr. 16 (internal citations omitted). Thus, although Parsons disagrees with the ALJ's findings, the ALJ found her conditions more limiting than initial medical reports indicated. Had he relied more heavily on initial examinations, he may have found her RFC even greater than he ultimately did. In any event, the Court will not reconsider the ALJ's evaluation here, as such evidentiary considerations fall within the clear discretion of the ALJ. *See Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) ("It is, of course, for the Secretary to decide what weight to accord various medical reports.").

The Court will neither reweigh the evidence nor substitute its judgment for the Commissioner's; it will only examine the record to ensure substantial evidence supports the conclusion reached. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. Here, the ALJ's RFC analysis is replete with references to Dr. Torres's substantive findings, as discussed above. Because the facts in Dr. Torres's opinion control over the labels he used to describe them, the Court must default to the ALJ's reasoned analysis of that minor discrepancy. *See Brown*, 192 F.3d

at 496 (quoting *Selders*, 914 F.2d at 617) ("Conflicts in the evidence are for the [Commissioner] and not the courts to resolve."). While Parsons contends the ALJ "failed to reconcile this inconsistency," the ALJ's clear explanation for his findings undermines that argument. *See* Tr. 683-88. With detail and particularity, the ALJ explained how he used Dr. Torres's opinion and why the opinion supports his RFC conclusion. *Id.* Accordingly, the ALJ did not "mischaracterize" the opinion, and substantial evidence—from Dr. Torres's report and elsewhere in the record—supports his RFC determination.

### 2. The ALJ did not substitute his lay medical opinion for expert opinions.

Parsons argues the ALJ erred by improperly inserting his own lay opinion in place of expert medical opinion. ECF No. 26 at 14. She contends "substantial evidence [] was admitted to the record that was not reviewed by any medical professional." *Id.* Thus, Parsons argues the ALJ erred harmfully to the extent he relied upon such unreviewed records when formulating his physical RFC determination. *Id.* This argument does not persuade because the evidence she references can hardly be called "substantial" and because the ALJ did not rely on the referenced evidence when analyzing Parsons's physical RFC.

Parsons notes that her spinal x-ray from December 2017 was admitted into evidence despite not being reviewed by a medical expert. *Id.* She likens this to a case where a claimant "submitted roughly 900 pages of medical records that were never reviewed by a medical doctor but were relied on by the ALJ in his opinion." *Id.* at 13 (discussing *Kimberly P.*, 2020 WL 4756758, at *4). But the difference between the instant matter and *Kimberly P.* is chasmic, thus undermining Parsons's argument.

As Parsons acknowledges, *Kimberly P.* involved "roughly 900 pages of medical records" that the ALJ improperly relied upon when reaching his conclusion. *Id.* at *1 & n.1. Here, Parsons

11

complains about a single x-ray from 2017. ECF No. 26 at 14; *see* Tr. 1082. One x-ray is a far cry from the veritable mountain of unverified medical evidence in *Kimberly P.* Moreover, the ALJ in *Kimberly P.* predicated his findings on the unreviewed medical records. *See Kimberly P.*, 2020 WL 4756758, at *1 & n.1. Here, the ALJ referenced Parsons's December 2017 x-ray a single time in his six-page analysis. *See* Tr. 686. Given that one reference, the undersigned cannot conclude, as Parsons insists, that the ALJ "rel[ied] on" the x-ray when reaching his conclusion. *See* ECF No. 26 at 14.

In addition to the quantitative difference between the 900 pages in *Kimberly P.* and the single x-ray here, the record evidences a clear qualitative difference in the respective ALJs' analyses. In *Kimberly P.*, the ALJ so pervasively based his opinion in medical records for which he had no expert interpretation that the Court concluded he "played doctor" and effectively "render[ed] his own interpretation of the medical evidence in assessing [the] claimant's RFC." *See Kimberly P.*, 2020 WL 4756758, at *1 & n.1 (quoting *Ripley*, 67 F.3d at 557). Had the ALJ indicated the crux of his RFC determination was rooted in that fateful 2017 x-ray, the undersigned might see more merit in Parsons's argument. However, the ALJ only passively referenced the x-ray in a rapid-fire list of relevant x-rays over the past several years. *See* Tr. 686. Rather than relying on the x-ray, his analysis looked to the evidentiary record as a whole, including substantial records which post-date the December 2017 x-ray. *Id.* at 686-88. Thus, the mere presence of that x-ray in the evidentiary record does not undermine the reliability of the ALJ's findings. While the x-ray should have been examined by a medical expert prior to its inclusion in the record, that issue proves inconsequential for this analysis because remand is not required if an ALJ's error was harmless. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

No reasonable reading of the ALJ's extensive analysis could lead to the conclusion that he "played doctor" as Parsons contends. *See* ECF No. 26 at 14. Rather than inserting his lay opinion about material medical facts, the ALJ robustly justified his findings with specific references to the entire evidentiary record—including the opinions of multiple medical experts. *See* Tr. 683-88. The ALJ pointed to extensive medical examinations that supported his conclusion and explained from the record why "[t]he claimant's statements about the intensity, persistence, and limiting effects of her physical symptoms are not generally consistent with the medical records." *Id.* at 687. As he noted with respect to Dr. Torres's examination: "[Parsons] had limited range of motion in her spine but she was able to ambulate with a steady gait [and] . . . was able to perform toe, heel, and tandem walking without difficulty." *Id.* at 688.

The ALJ also relied on Parsons's testimony when reaching his conclusion, as she openly acknowledged she could control her conditions with over-the-counter medications and stretching. *Id.* at 653. She also reported she could perform chores, care for animals, and drive a car. *Id.* at 17, 399-401. Thus, the record reflects that the ALJ relied on substantial evidence beyond the single x-ray Parsons contests. Indeed, had that x-ray been entirely omitted from the evidentiary record, nothing in the ALJ's analysis would change. Accordingly, the ALJ did not substitute his lay medical opinion for expert opinions, and thus did not err with respect to his RFC analysis.

## IV.   CONCLUSION

The ALJ employed correct legal standards, and substantial evidence supports his conclusion. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions,

and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

      **SIGNED** on January 28, 2022.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE